RAILROAD COMMISSION OF TEXAS, et al., Appellants,

v.

ENNIS TRANSPORTATION CO., INC., et al., Appellees.

FOUR B LINES, INC., et al., Appellants,

v.

SAM LATTNER DISTRIBUTING COMPANY, et al., Appellees.

Nos. 14176, 14295.

Court of Appeals of Texas, Austin.

July 3, 1985.

Rehearing Denied Aug. 28, 1985.

Jim Mattox, Atty. Gen., Douglas Fraser, Asst. Atty. Gen., Austin, for R.R. Com'n of Texas.

James M. Doherty, Doherty & Munson, Austin, for Melton Truck Lines, Inc.

Jerry K. Warren, Rain, Harrell, Emery, Young & Doke, Dallas, for Ennis Transp. Co., Inc., Ennis Transport Co., Inc., and Clyde C. Dent.

Phillip Robinson, Mert Starnes, John R. Whisenhunt, Robinson, Felts, Starnes, Angenend & Mashburn, Austin, for Sam Lattner Distributing Co. and Highway Express, Inc.

Thomas F. Sedberry, Small, Craig & Werkenthin, Austin, for Four B Lines, Inc.

Before SHANNON, C.J., and EARL W. SMITH and BRADY, JJ.

SHANNON, Chief Justice.

These appeals concern the duty *vel non* of the Railroad Commission to allow contract carriers to protest applications for common carrier or contract carrier authority.

Appellant Melton Truck Lines, Inc., sought authority from the Commission to transport roofing materials and supplies between all points in Texas while appellant Four B Lines, Inc., sought to amend its contract carrier permit to authorize its transportation of insulation materials and products from points in Navarro County to all points in Texas. Appellees Sam Lattner Distributing Company, Central Freight Lines, Inc., Ennis Transportation Co., Inc., and Ennis Transport Co., Inc., all contract carriers, protested appellants' applications for authority. Upon motion, the Commission struck appellees' protests. Thereafter, the Commission granted appellants' applications for authority.

Appellees then perfected separate administrative appeals to the district court of Travis County complaining, among other things, that the Commission had erred in striking their protests and requesting that the agency orders be set aside and the cause be remanded to the Commission for further proceedings. After hearing, the district court rendered judgment in each case setting aside the agency order, concluding that the Commission had erred in striking appellees' protests. The district court ordered the Commission to rehear and reconsider the applications in light of appellees' protests.

In the Melton proceeding, the district court, inappropriately,[1] filed findings of fact. The district court also took judicial notice that the Railroad Commission prior to 1982 had consistently interpreted Tex. Rev.Civ.Stat.Ann. art. 911b § 5a(d) and its own rules and regulations so as to recognize and to accord intra-state contract carriers, holding existing contracts with ship-

**1.** *Hooks v. Texas Dept. of Water Resources,* 645 S.W.2d 874 (Tex.App.1983, writ ref'd n.r.e.); *Galveston Bay Conservation and Preservation Association v. Texas Air Control Board,* 586 S.W.2d 634 (Tex.Civ.App.1979, writ ref'd n.r.e.); and *Wylie Independent School District v. Central Education Agency,* 488 S.W.2d 166 (Tex.Civ.App. 1972, writ ref'd n.r.e.).

pers authorized to be served by their respective carrier permits, status as interested parties and "existing carriers" in competitive certificate and permit cases.

The district court filed conclusions of law determining, among other things, that the Ennis Companies were "existing carriers" within the meaning of Tex.Rev.Civ.Stat. Ann. art. 911b § 5a(d). Because the Ennis Companies were, as well, "interested parties" within the meaning of the Commission's rules, the district court concluded that such companies were entitled to participate in the proceedings before the Commission to the extent that they were able to show themselves authorized to haul traffic sought to be transported by Melton.

The district court concluded that the Commission's view that the Ennis Companies were not "existing carriers" was directly contrary to the main objective, purposes and transportation policies of the Legislature concerning motor carrier entry regulation.

The pivotal question in each appeal is whether the Commission must accord a contract carrier the right under Tex.Rev. Civ.Stat.Ann. art. 911b to protest applications for operating rights. The difference between the two appeals is that the Melton appeal involves a contract carrier's protest of a specialized common carrier application and the Four B appeal concerns a contract carrier's protest of another contract carrier's application. In each appeal, the Commission based its order denying the right to protest upon a determination that contract carriers are neither authorized nor obligated under their permits to serve the public generally, are not "existing carriers" under art. 911b, and, therefore, have no administratively cognizable interest in application proceedings.

In defense of the order striking the protests, the Commission and other appellants, by many points of error, point out that contract carriers, such as Lattner and Ennis, are a class of carriers separate and distinct from the class of common carriers. Contract carriers are regulated, private carriers whose contracts, by their terms, fix their rights and obligations. Unlike common carriers, contract carriers do not, and may not, serve the public generally. The Commission and the other appellants support this distinction by reference to art. 911b § 5a(d)(2) & (3) and § 1(h). Because contract carriers, by definition, cannot serve the public, appellants argue that evidence concerning their service is irrelevant to a determination whether to grant a common carrier, such as Melton, authority to serve the general public.

Evidence concerning a contract carrier's service is equally irrelevant, posit the Commission and the other appellants, to an application for a contract carrier permit such as Four B's. Article 911b § 5a(d) prohibits the Commission from granting any contract carrier application if "the existing carriers are rendering, or are capable of rendering, a reasonably adequate service...." Based on language in § 6(c), the Commission insists that "existing carriers" refers only to common carriers and not to contract carriers. Because the regulation's purpose is to promote efficient public service by common carriers, and not to protect competition among contract carriers, the Commission concludes that contract carriers have no right to protest another contract carrier's application.

In support of the district court's judgment, appellees point out that in the past the Commission permitted contract carriers to protest in application proceedings and that the Commission's orders in Melton and Four B are at odds with that practice. The Commission has recognized contract carriers operating under valid permits as "motor carriers" subject to the regulatory provisions of art. 911b and as "existing carriers" involved in rendering regulated transportation under art. 911b §§ 5a and 9. Furthermore, the Commission has recognized contract carriers as interested parties under art. 911b § 12(a) with standing to appear in competitive application proceedings which would duplicate existing service.

Appellees find authority for their claimed right to protest in art. 911b, Tex.Rev.Civ.

Stat.Ann. art. 6252–13a § 19 (Supp.1985), and the opinions in *Hooks v. Texas Dept. of Water Resources*, 611 S.W.2d 417 (Tex. 1981), and *Texas Industrial Traffic League v. Railroad Commission of Texas*, 628 S.W.2d 187 (Tex.App.) rev'd on other grounds, 633 S.W.2d 821 (Tex.1982). Each appellee urges that it has a justiciable interest to protest competitive applications of common or contract carriers which duplicate the protestant's own operating authority.

In the beginning, we observe that the district court's claimed error in taking judicial notice of the Commission's past practice is of little moment in the resolution of these appeals. Whatever status accorded contract carriers by the Commission in other and previous proceedings has little relevance to the rights of the contract carriers in the hearings here involved.

█ It is true that one's right to appear in an agency proceeding should be liberally recognized since an agency should be apprised of diverse viewpoints in order to determine where the public interest lies and how it should be furthered. *Texas Industrial Traffic League v. Railroad Commission of Texas, supra* at 197.

█ In general, however, the allowance or denial of petitions for intervention in administrative proceedings rests in the discretion of the agency. Ordinarily, reviewing courts do not overturn agency orders concerning the propriety of intervention. 1 Cooper, State Administrative Law 325, 326 (1965).

█ This Court has concluded that the district court erred in determining that the Commission was *required* to permit the contract carriers to protest the applications for service. There is no provision of the Administrative Procedure and Texas Register Act, Tex.Rev.Civ.Stat.Ann. art. 6252–13a, *et seq.*,[2] which specifically, or by implication, requires the Commission to allow contract carriers to protest proceedings involving applications for common or contract carriage. In that connection, § 13 of

the Act requires agencies to afford "all parties" the opportunity for hearing after notice. Section 3(5) of the Act defines "party" as each person or agency named or admitted as a party. As is plain, § 13 simply accords a "party" an opportunity for a hearing. That section gives no guidance for identifying those who are entitled to be "parties." The circular definition of § 3(5), likewise, is not helpful (a party is one who has been named or admitted as a party) in the resolution of the question in this appeal.

█ Section 19 of the Act governs judicial review of agency orders. One who has exhausted all administrative remedies and who is aggrieved by a final order of the agency may file an administrative appeal in the district court of Travis County. *Hooks v. Texas Dept. of Water Resources, supra,* and *Texas Industrial Traffic League v. Railroad Commission, supra,* concern the construction and application of § 19. Section 19 and these authorities address the rights of persons, who were parties to the administrative proceeding, to pursue an administrative appeal to district court and do not bear upon the duty *vel non* of the Commission to permit contract carriers to appear and protest the applications for service.

Likewise, this Court has not been shown a provision of the Motor Carrier Act, Tex. Rev.Civ.Stat.Ann. art. 911b *et seq.* (1964 & Supp.1985), requiring the Commission to allow the contract carriers to appear and protest applications for service. The district court accepted the contract carriers' argument that they were "existing carriers" within the meaning of art. 911b § 5a(d) and, therefore, must be afforded protestant status in application proceedings. Section 5a(d) provides that the Commission shall have no authority to grant an application for a certificate of convenience and necessity authorizing operation as a common carrier unless it is established by substantial evidence:

**2.** Usually referred to in this opinion as the "Act."

(1) that the services and facilities of the *existing carriers* serving the territory or any part thereof are inadequate;

(2) that there exists a public necessity for such service; and

(3) the public convenience will be promoted by granting said application. [Emphasis supplied]

■ From an examination of art. 911b in its entirety, *City of Mason v. West Texas Utilities Company*, 150 Tex. 18, 237 S.W.2d 273 (1951), this Court has concluded that the phrase "existing carriers," as used in § 5a(d)(1), refers to existing common carriers and not to existing contract carriers. This is so because pursuant to § 5a(d) the Commission is to grant a specialized motor common carrier certificate if it is established by substantial evidence "that there exists a *public* necessity for such service" and "that the *public* convenience will be promoted by granting said application." (Emphasis supplied) Furthermore, § 5a(d) provides that the Railroad Commission's order granting a specialized motor carrier certificate must set forth findings pointing out "... the *public* need for the proposed service." (Emphasis supplied).

■ Contract carriers, as distinguished from specialized motor common carriers, are a class of regulated "private carriers" whose rights and obligations are fixed by the terms of privately negotiated contracts with particular shippers. Contract carriers do not serve the public generally. The Commission has no authority to require a contract carrier to serve any member of the general public or even to serve the contracting shippers named in contract carrier permits. *Lake Transport Inc. v. Railroad Comm'n of Texas*, 505 S.W.2d 781 (Tex.1974).

■ This Court agrees with appellants' argument that although contract carriers are perhaps "existing carriers" in terms of common usage, they are *not* "existing carriers" which the Commission is compelled by § 5a(d) to consider as protestants to specialized motor common carrier cases. The Commission is not required to accord protestant status to contract carriers in common carrier cases where *public* convenience and necessity is the ultimate issue because contract carriers (a) are not required to "serve the public," (b) have no service obligation, even to the contracting shippers named in their contract carrier permits, which may be enforced by the Commission, (c) operate only pursuant to rights and obligations created by privately negotiated contracts with particular shippers, and (d) continue to "exist" only so long as their contracting shippers are willing to continue to be parties to contracts with such carriers. *Lake Transport, Inc. v. Railroad Commission of Texas, supra.*

■ Regulation of contract carriers was imposed, in the first instance, to prevent impairment of the services of common carriers which serve all of the public. *Stephenson v. Binford*, 287 U.S. 251, 53 S.Ct. 181, 77 L.Ed. 288 (1932). That conclusion is borne out by several provisions of art. 911b. Section 6(c) provides that the Commission may not grant a contract carrier permit if "the proposed operation of any such contract carrier will impair the efficient public service of any authorized common carrier or common carriers then adequately serving the same territory." Under § 6-aa, rates and charges prescribed by the Commission for contract carriers may not be less than the rates prescribed for common carriers for substantially the same service, and pursuant to § 6-bb, no contract carrier permit may be granted to any common carrier, nor may a common carrier certificate be granted to a contract carrier.

On the other hand, this Court has been shown nothing indicating a legislative intent to impose upon the Commission an obligation to protect contract carriers from competition by common carriers.

The Commission has adopted rules of practice before the Transportation Division, and Rule 051.03.50.011 provides that any "party in interest" may appear in any proceeding before the Commission. A "party in interest" is not defined in the rules of the agency. There is no rule specifically

requiring the Commission to allow contract carriers to protest common carrier or contract carrier applications.

In sum, this Court has concluded that the Commission may allow contract carriers to protest common carrier or contract carrier applications for authority but there is nothing which compels the Commission to do so.

The judgments of the district court are reversed. As the district court did not pass on the merits of appellees' administrative appeals, the causes are remanded to the district court for consideration on the merits.