# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00205-CV

**Coastal Habitat Alliance, Appellant**

v.

**Public Utility Commission of Texas; Barry T. Smitherman, Chairman;
Kenneth W. Anderson, Jr., Commissioner; Donna L. Nelson, Commissioner;
Texas Gulf Wind LLC; PPM Energy, Inc.; and AEP Texas Central Company, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
## NO. D-1-GN-07-004164, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## O P I N I O N

At issue in this case is the district court's subject-matter jurisdiction to review the Public Utility Commission's denial of a motion to intervene in a proceeding before the Commission. The Commission denied appellant Coastal Habitat Alliance's motion to intervene in the Commission's consideration of an electric utility's application to amend its certificate of convenience and necessity. The Alliance filed suit in district court in an attempt to appeal or challenge the order denying the request to intervene. The district court dismissed the Alliance's lawsuit for lack of subject-matter jurisdiction. We hold that the Administrative Procedure Act does not authorize a non-party such as the Alliance to independently pursue judicial review of a final order or decision of the Public Utility Commission. We also hold dismissal of the Alliance's claim for declaratory relief to be proper because, by statute, the denial of the Alliance's intervention

was a matter committed to the Commission's discretion. Although a constitutional due process claim may be asserted by a non-party to an administrative proceeding, the Alliance has failed to allege the deprivation of a vested property right as a result of the denial of its intervention. We affirm the judgment of the district court.

### Factual and Procedural Background

On June 25, 2007, appellee AEP Texas Central Company (AEP TCC) filed with the Public Utility Commission of Texas an application to amend its certificate of convenience and necessity (CCN) to construct, own, and operate a 21.6-mile, 345-kilovolt, double-circuit transmission line on Kenedy Ranch in Kenedy County. The transmission line is intended to interconnect two proposed wind generation facilities to be constructed on the ranch. On August 9, 2007, appellant Coastal Habitat Alliance filed a motion to intervene in the Commission's review of AEP TCC's application. The Alliance is an association of landowners and environmental groups formed for the purpose of protecting their environmental interests in the coastal region on which the transmission line would be located.[1] The motion to intervene alleged "adverse effects of this project on coastal wetlands, flora and fauna in the region, and endangered and migratory species."

The Commission denied the Alliance's motion to intervene on September 7, 2007, concluding that the Alliance had not shown a justiciable interest in the proceeding. The Alliance timely filed an appeal of the denial to the Commission, *see* 16 Tex. Admin. Code § 22.123(a)(2)

---

[1] Members of the Alliance identified in its motion to intervene include the American Bird Conservancy, the Coastal Bend Audubon Society, the Houston Audubon Society, the Lower Laguna Madre Foundation, and King Ranch, Inc.

(2009) (Pub. Util. Comm'n, Appeal of an Interim Order and Motions for Reconsideration of Interim Order Issued by the Commission), and the Commission issued a written order denying the appeal on October 29, 2007. The Alliance then filed a motion for reconsideration, *see id.* § 22.123(b), but no commissioner placed the motion on the agenda for an open meeting, causing the motion to be overruled by operation of law as of November 13, 2007, *see id.* § 22.123(b)(6)(A).

On November 27, 2007, the Commission issued a Notice of Approval granting AEP TCC's application to amend its CCN. On December 4, 2007, the Alliance filed suit in district court against the Commission, as well as Chairman Barry T. Smitherman and Commissioners Julie C. Parsley and Paul Hudson in their official capacities,[2] seeking reversal of the order denying its motion to intervene and seeking to vacate the administrative approval of the underlying CCN based on the claim that the denial of the Alliance's request to intervene was improper. In its original petition, the Alliance asserted that the denial of its intervention violated the Texas Utility Code and the Alliance's right to due process and due course of law, and sought declaratory relief under the Administrative Procedure Act, mandamus relief, and injunctive relief.[3]

---

[2] After this appeal was filed, Kenneth W. Anderson, Jr. was appointed to replace Julie C. Parsley as commissioner, and Donna L. Nelson was appointed to replace Paul Hudson as commissioner. The successors have been substituted as appellees. *See* Tex. R. App. P. 7.2(a).

In addition, at the district court, appellees AEP TCC, Texas Gulf Wind LLC, and PPM Energy, Inc. intervened in the lawsuit. Texas Gulf Wind and PPM Energy are developing the proposed wind farms to be connected to AEP TCC's transmission line.

[3] After filing the original petition in district court, on December 17, 2007, the Alliance filed a motion for rehearing with the Commission as to the Notice of Approval itself. To the extent the motion was a viable motion, it was overruled by operation of law after no commissioner took action on it. *See* Tex. Gov't Code Ann. § 2001.146(c) (West 2008).

3

By agreement among the parties, a hearing on the merits was set for March 5, 2008, in the district court. On February 21, 2008, AEP TCC and the Commission filed pleas to the jurisdiction seeking dismissal of the lawsuit. On March 4, 2008, the Alliance filed a response to the pleas to the jurisdiction, and filed a motion for leave to file an amended petition, by which the Alliance sought to add a claim for relief under the Uniform Declaratory Judgments Act as an additional basis for declaratory relief. Following the March 5 hearing on these pre-trial motions, the district court, on March 6, 2008, denied the Alliance's motion to amend its original petition, granted the pleas to the jurisdiction, and dismissed the Alliance's lawsuit. Coastal Habitat Alliance appeals.

*Analysis*

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000). Whether a court has subject-matter jurisdiction and whether a plaintiff has alleged facts that affirmatively demonstrate subject-matter jurisdiction are questions of law that we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In deciding a plea to the jurisdiction, we are not to weigh the merits of the plaintiff's claims beyond the extent necessary to determine jurisdiction, but are to consider the plaintiff's pleadings, construed in the plaintiff's favor, and evidence pertinent to the jurisdictional inquiry. *Id.* at 227-28; *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

In this lawsuit, Coastal Habitat Alliance seeks judicial review of the Commission's interlocutory order denying the Alliance's motion to intervene. "It is well recognized under Texas law that there is no right to judicial review of an administrative order unless a statute provides

4

a right or unless the order adversely affects a vested property right or otherwise violates a constitutional right." *Continental Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000) (citing *Stone v. Texas Liquor Control Bd.*, 417 S.W.2d 385, 385-86 (Tex. 1967)). The Alliance argues that it has a right to judicial review based on (1) the Administrative Procedure Act, (2) the Uniform Declaratory Judgments Act, and (3) the constitutional right of due process and due course of law.

*Administrative Procedure Act*

The Alliance has a right to judicial review of an administrative order if a statute provides that right. *See id.* The Alliance asserts that the Administrative Procedure Act (APA)[4] gives the district court jurisdiction over the Alliance's lawsuit that amounts to an appeal of the denial of its request to intervene. Section 2001.171 of the APA states as follows: "A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter." Tex. Gov't Code Ann. § 2001.171 (West 2008). The Texas Supreme Court has held that section 2001.171 provides an independent right to judicial review of a decision in a contested case. *See Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 173 (Tex. 2004). However, the supreme court limited its holding to situations in which the agency's enabling statute "neither specifically authorizes nor prohibits judicial review of the decision." *Id.*

---

[4] Tex. Gov't Code Ann. §§ 2001.001-.902 (West 2008).

5

The Public Utility Regulatory Act (PURA)[5] specifically authorizes review of decisions by the Commission. Section 15.001 of the PURA provides that "[a]ny party to a proceeding before the commission is entitled to judicial review under the substantial evidence rule." Tex. Util. Code Ann. § 15.001 (West 2007). However, the Alliance was not a *party* to the Commission's review of AEP TCC's application because the Alliance's attempt to intervene was denied. The APA defines a "party" as "a person or state agency named or admitted as a party." Tex. Gov't Code Ann. § 2001.003(1) (West 2008). The Alliance was neither named nor admitted as a party. The Commission's rules reach the same result, providing that parties to a proceeding include applicants and complainants, respondents, intervenors, and commission staff representing the public interest, *see* 16 Tex. Admin. Code § 22.102(a) (2009) (Pub. Util. Comm'n, Classification of Parties), but "[a]ny person that has not intervened in a proceeding, or who has been denied permission to intervene, shall not be considered a party," *id.* § 22.102(c). The Alliance was not allowed to intervene. Therefore, the PURA specifically authorizes judicial review of a proceeding before the Commission, but in a manner that excludes an entity—such as the Alliance—who is not a party to the proceeding.

Based on the supreme court's holding in *Mega Child Care*—that APA section 2001.171 provides an independent right to judicial review in situations in which the agency's enabling statute "neither specifically authorizes nor prohibits judicial review of the decision," *see* 145 S.W.3d at 173—this Court has held that an independent right to judicial review under the APA

---

[5] Tex. Util. Code Ann. §§ 11.001-66.016 (West 2007 & Supp. 2008). The PURA is the Public Utility Commission's enabling statute. *See Office of Pub. Util. Counsel v. Public Util. Comm'n*, 843 S.W.2d 718, 720 n.5 (Tex. App.—Austin 1992, writ denied).

applies only "when the agency's enabling act is silent" as to judicial review, *see West v. Texas Comm'n on Envtl. Quality*, 260 S.W.3d 256, 260-61 (Tex. App.—Austin 2008, pet. denied). The PURA is not silent on this matter. It specifically authorizes judicial review only for parties. *See* Tex. Util. Code Ann. § 15.001. We, therefore, hold that a non-party to a proceeding before the Commission is not statutorily entitled to judicial review of the Commission's decision to deny intervention under either the PURA or the APA.[6] This holding is consistent with this Court's determination in a prior case that a non-party has no statutory right to judicial review of a decision by the Public Utility Commission:

> The [plaintiff] did not participate in the administrative hearing in any capacity before the Commission issued its decision and did not obtain permission to intervene in the administrative proceeding; the [plaintiff], therefore, was not a party to the proceeding and does not have a statutory right to judicial review of the Commission's decision.

*City of Port Arthur v. Southwestern Bell Tel. Co.*, 13 S.W.3d 841, 844 (Tex. App.—Austin 2000, no pet.) (citing Tex. Util. Code Ann. § 15.001; 16 Tex. Admin. Code § 22.102(c)).[7]

---

[6] Our holding that there is no statutory basis for a non-party to appeal the Commission's denial of a motion to intervene does not foreclose the possibility of review via mandamus. *See State v. Thomas*, 766 S.W.2d 217, 218-20 (Tex. 1989) (granting petition for writ of mandamus and ordering Public Utility Commission to vacate its order denying Texas Attorney General's intervention). The Alliance has not appealed the dismissal of its request for mandamus relief.

[7] The Alliance cites *Railroad Commission v. Ennis Transportation Co.*, 695 S.W.2d 706 (Tex. App.—Austin 1985, writ ref'd n.r.e.), to demonstrate that this Court has exercised jurisdiction to review an administrative agency's decision to deny intervention. However, while this Court in *Ennis Transportation* did address the merits of a denial of intervention in an administrative proceeding, the source of the district court's jurisdiction over the non-party's appeal was not addressed. *See generally* 695 S.W.2d 706. Moreover, the case involved an administrative proceeding before the Railroad Commission—not the Public Utility Commission—and therefore, PURA section 15.001 would not have applied to the proceedings. *See id.* at 708.

7

PURA section 15.001 authorizes only a party to obtain judicial review of a proceeding before the Commission. *See* Tex. Util. Code Ann. § 15.001. The Alliance was not a party to the administrative proceeding below. *See* 16 Tex. Admin. Code § 22.102(c). Consequently, the Alliance has no statutory right under the APA to judicial review of the Commission's order denying the Alliance's intervention.[8]

*Uniform Declaratory Judgments Act*

Coastal Habitat Alliance next asserts that the Uniform Declaratory Judgments Act (UDJA)[9] provides a statutory right to judicial review of the administrative order denying its motion to intervene. The UDJA provides that a person whose rights, status, or other legal relations are affected by a statute may have determined any question of construction or validity arising under the

---

[8] Ignoring the impact of PURA section 15.001 and focusing on APA section 2001.171 alone, the Alliance argues it "exhausted all administrative remedies" by timely appealing to the Commission the denial of its motion to intervene and by filing a motion for reconsideration in accordance with the Commission's rules, and was "aggrieved by a final decision" that approved the construction of a transmission line contrary to the Alliance's environmental interests. *See* Tex. Gov't Code Ann. § 2001.171. In response, appellees assert that the APA itself could be construed to foreclose judicial review for a non-party. *See id.* §§ 2001.145(a) ("A timely motion for rehearing is a prerequisite to an appeal in a contested case . . . ."), 2001.146(a) ("A motion for rehearing in a contested case must be filed by a party . . . ."). *But see Thomas*, 766 S.W.2d at 225-26 (Hecht, J., dissenting) (arguing that denial of motion to intervene should be appealable). Moreover, even if the APA would authorize judicial review for a non-party appealing an interlocutory order relating to the denial of intervention, appellees assert that the Alliance's petition was untimely because it was filed before the decision in the case became final. *See Lindsay v. Sterling*, 690 S.W.2d 560, 563-64 (Tex. 1985) (dismissing lawsuit reviewing administrative decision where plaintiff filed suit before motion for rehearing was overruled at agency level). We need not resolve these issues concerning the APA, however, because we conclude that the PURA acts to prevent the APA from providing an independent right to judicial review of a contested case before the Commission.

[9] Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008).

statute, and may obtain a declaration of rights, status, or other legal relations thereunder. Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 2008). The Alliance contends that the district court has jurisdiction over the Alliance's UDJA claim because it seeks the proper construction of PURA section 37.054(b) and a declaration that the Alliance is entitled to intervene in accordance with that statute. Section 37.054(b) of the PURA governs a person's ability to intervene in the Commission's consideration of a utility's application to amend a CCN. *See* Tex. Util. Code Ann. § 37.054(b) (West 2007). Specifically, that section provides that a person "interested in the application" may intervene. *Id.*

The Alliance's request for declaratory relief in its original petition did not contain a reference to the UDJA.[10] The Alliance sought to amend its pleadings to reference the UDJA, but the district court denied the motion. Appellees argue that the Alliance's motion for leave to amend its pleadings, which was filed the day before the scheduled hearing on the merits, was properly denied because the amendment "operated as a surprise" to appellees, *see* Tex. R. Civ. P. 63, and would have reshaped the Alliance's cause of action, *see Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex. 1980). The Alliance counters that its original petition contained sufficient facts and arguments to constitute a UDJA claim and the amendment merely supplied the proper statutory citation. A decision to deny an amendment to the pleadings that is not mandatory may be reversed only if it is a clear abuse

---

[10] The original petition sought declaratory relief only under section 2001.038 of the APA, which authorizes an action for declaratory judgment to determine the "validity or applicability of a rule." Tex. Gov't Code Ann. § 2001.038(a); *see Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Auth.*, 96 S.W.3d 519, 529 (Tex. App.—Austin 2002, pet. denied) ("[Section 2001.038] authorizes a district court to resolve two issues: (1) whether a rule is *valid*, and/or (2) whether a rule is *applicable*."). The Alliance does not challenge the district court's dismissal of the APA section 2001.038 claim.

of discretion. *State Bar v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994). We need not determine whether the district court's denial of the Alliance's motion to amend its pleadings was an abuse of discretion, however, because we determine that appellees' pleas to the jurisdiction would have been properly granted as to the Alliance's UDJA claim.

Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority. *City of El Paso v. Heinrich*, No. 06-0778, 2009 Tex. LEXIS 253, at *4-5 (Tex. May 1, 2009); *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). A justiciable controversy regarding whether a state agency or official has acted beyond its statutory authority provides a jurisdictional basis for a UDJA action seeking statutory construction of that authority. *Texas Dep't of Ins. v. Reconveyance Servs., Inc.*, 240 S.W.3d 418, 428 (Tex. App.—Austin 2007, pet. filed). However, a suit that seeks to control a state official's exercise of discretion within his legal authority is a suit to control state action, which is barred by sovereign immunity absent legislative consent. *McLane Co. v. Strayhorn*, 148 S.W.3d 644, 649 (Tex. App.—Austin 2004, pet. denied); *see Heinrich*, 2009 Tex. LEXIS 253, at *9 (suit alleging violation of statute "leaving no room for discretion" is not barred).

Therefore, if the Commission's denial of the Alliance's motion to intervene was a valid exercise of discretion, the Alliance's UDJA claim is barred by sovereign immunity. In *Railroad Commission v. Ennis Transportation Co.*, this Court recognized that generally "the allowance or denial of petitions for intervention in administrative proceedings rests in the discretion of the agency." 695 S.W.2d 706, 710 (Tex. App.—Austin 1985, writ ref'd n.r.e.). The plaintiffs in *Ennis Transportation* were contract carriers who had appealed an agency's denial of their

participation as parties to an administrative proceeding, and the trial court had concluded that the carriers were "interested parties" who were *entitled* to so participate. *See id.* at 708-09. This Court reversed the district court's judgment, holding that while the agency could allow the carriers to intervene, it was not compelled to do so. *See id.* at 711-12.[11]

Section 37.054(b) of the PURA provides that a "person or electric cooperative interested in the application may intervene at the hearing." Tex. Util. Code Ann. § 37.054(b).[12] The Alliance contends that because section 37.054(b) of the PURA uses the permissive verb "may" with the interested person as the subject, a person claiming an interest holds the discretion regarding his intervention, not the Commission. According to the Alliance's construction, section 37.054(b) mandates that the Commission comply with such a person's exercise of discretion to intervene.

However, the Alliance's statutory construction conflicts with this Court's analysis in *Ennis Transportation*. In that case, the governing statute—the Motor Carrier Act—provided that interested parties "may appear" in the proceeding. *See* Act of March 13, 1929, 41st Leg., R.S., ch. 314, § 12, 1929 Tex. Gen. Laws 698, 703 (repealed by Act of May 24, 1995, 74th Leg., R.S., ch. 705, § 31(a)(4), 1995 Tex. Gen. Laws 3719, 3740). Nevertheless, this Court stated that it had

---

[11] Similarly, a *court's* decision on a party's intervention is vested in the discretion of the court. *See In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 722-23 (Tex. 2006) (court of appeals' denial of intervention reviewed for abuse of discretion); *Zeifman v. Michels*, 229 S.W.3d 460, 465 (Tex. App.—Austin 2007, no pet.) (trial court's denial of intervention reviewed for abuse of discretion).

[12] The Commission's rules state, "A person has standing to intervene if that person: (1) has a right to participate which is expressly conferred by statute, commission rule or order or other law; or (2) has or represents persons with a justiciable interest which may be adversely affected by the outcome of the proceeding." 16 Tex. Admin. Code § 22.103(b) (2009) (Pub. Util. Comm'n, Standing to Intervene).

"not been shown a provision of the Motor Carrier Act . . . requiring the [agency] to allow the contract carriers to appear and protest applications for service." 695 S.W.2d at 710. In addition, the agency had adopted a rule of practice stating that a party in interest "may appear in any proceeding" before the agency. *Id.* at 711. Again, this Court concluded from this language that there was "no rule specifically requiring the [agency] to allow" the intervention requested. *Id.* at 711-12. This Court's interpretation of the applicable statute and rule in *Ennis Transportation* was based on the fact that the term "party in interest" was not defined in the agency's rules and, therefore, the agency was not compelled to allow a person claiming an interest to intervene. *Id.* The same reasoning applies here. Even if we were to agree that PURA section 37.054(b)'s use of "may" places discretion in the hands of an interested person, we would still hold that the Commission has discretion to determine whether a person is in fact "interested" in the first place. Based on this Court's holding in *Ennis Transportation*, we conclude that whether the Alliance is "interested" so as to be able to intervene in the administrative proceeding below was a matter within the Commission's discretion.

Under the amended petition filed by the Alliance, the Alliance sought a declaration under the UDJA that the Notice of Approval is void and that the Commission must allow the Alliance's participation as a party in the review of AEP TCC's application. Given that the denial of the Alliance's intervention was a discretionary act, this UDJA claim is an "attempt to exert control over the state," which is barred by sovereign immunity. *See Heinrich*, 2009 Tex. LEXIS 253, at *11 (ultra vires exception to sovereign immunity does not include complaint over government officer's exercise of discretion); *North Alamo Water Supply Corp. v. Texas Dep't of Health*, 839 S.W.2d 455, 459 (Tex. App.—Austin 1992, writ denied) ("The fact that the [agency] might decide 'wrongly'

12

in the eyes of an opposing party does not vitiate the agency's jurisdiction to make an initial decision."). Therefore, the UDJA does not provide the Alliance with a right to judicial review of the Commission's administrative order. We affirm the dismissal of the Alliance's claim for declaratory relief for lack of jurisdiction.

*Due Process*

Under Texas law, a party may have a right to judicial review of an administrative order if the order adversely affects a vested property right or otherwise violates a constitutional right. *Continental Cas. Ins. Co.*, 19 S.W.3d at 397; *see Public Util. Comm'n v. Pedernales Elec. Coop., Inc.*, 678 S.W.2d 214, 222 n.6 (Tex. App.—Austin 1984, writ ref'd n.r.e.) (noting that even if legislature denies judicial review of agency action, judicial review is available for deprivation of property without due process). Coastal Habitat Alliance contends that the Commission's denial of the Alliance's intervention deprived it of its constitutional right to due process, *see* U.S. Const. amend. XIV, § 1, and due course of law, *see* Tex. Const. art. I, § 19. Procedural due process requires notice and "an opportunity to be heard at a meaningful time and in a meaningful manner." *University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).[13] The Alliance asserts that the denial of its intervention violated its right

---

[13] "While the Texas Constitution is textually different in that it refers to 'due course' rather than 'due process,' we regard these terms as without meaningful distinction. As a result, in matters of procedural due process, we have traditionally followed contemporary federal due process interpretations of procedural due process issues." *University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995) (citation omitted).

13

to due process because it was unable to participate in a meaningful manner, including the conduct of discovery, the introduction of evidence at a hearing, and the cross-examination of witnesses.

Before considering what process is due, however, our first inquiry in a procedural due process claim is whether the plaintiff has been deprived of a property or liberty interest deserving protection under the federal and state constitutions. If a plaintiff fails to allege the deprivation of such an interest, the plaintiff has failed to allege a due process claim. *See Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 560-61 (Tex. 1985); *City of Arlington v. Centerfolds, Inc.*, 232 S.W.3d 238, 248-49 (Tex. App.—Fort Worth 2007, pet. denied).

The Alliance argues that, as an interested entity in the administrative proceedings, it had a vested interest in seeking a hearing and in participating as a party to protect its interests. However, we have already determined that the denial of the Alliance's motion to intervene—and, specifically, the determination that the Alliance was not an "interested" person—was a matter of the Commission's discretion. *See Ennis Transp.*, 695 S.W.2d at 710. Therefore, a person's desire to intervene in a proceeding before the Commission is not a vested property interest entitled to protection under the federal and state constitutions. *See Weatherford v. City of San Marcos*, 157 S.W.3d 473, 483-84 (Tex. App.—Austin 2004, pet. denied) (finding no vested property right in rezoning application, which is legislative act subject to discretion of city). The Alliance must demonstrate a vested property interest that will be deprived by the denial of its intervention in the proceeding other than its interest or desire to intervene. *See Pickell v. Brooks*, 846 S.W.2d 421, 426 (Tex. App.—Austin 1992, writ denied) ("[P]rocedural due-process analysis protects only what actually belongs to the individual, rather than recognizing that unfairness exists in the very act

14

of disposing of an individual's situation without allowing the individual to participate in some meaningful way.").

The Alliance contends that it possesses property rights that will be harmed by the proposed transmission line's impact on wildlife. According to the Alliance, the transmission line and its associated wind farms would disrupt a "unique and vital migratory bird corridor" and could destroy a "known endangered species habitat," and these consequences would, in turn, impair the Alliance's members' interests in wild bird conservation and birdwatching. One member of the Alliance, King Ranch, is an adjacent property owner to Kenedy Ranch, and its president alleges the proposed transmission line's threat to wildlife habitat will impair the profitability of King Ranch's birdwatching, wildlife tourism, and hunting expeditions on its property.[14] Similarly, the chairman of the board of trustees of the Lower Laguna Madre Foundation (another member of the Alliance) alleges potential harm to his financial interests in leading birdwatching tours on the coast.

The Alliance cites no authority for its proposition that a vested property right may exist in wildlife, or in the viewing, enjoyment, or hunting thereof. On the contrary, under state law, no vested property interest exists in wild animals. *Hollywood Park Humane Soc'y v. Town of Hollywood Park*, 261 S.W.3d 135, 140 (Tex. App.—San Antonio 2008, no pet.). Wild birds, as wild animals, belong to the State, and no individual property rights exist in them as long as they

---

[14] In its briefing, the Alliance states that King Ranch "provides 825,000 acres of vested property rights." Our question is not merely whether the Alliance's members *possess* vested property rights, however, but whether there is any allegation that any such rights have been *deprived*. There is no allegation that the transmission line would traverse King Ranch's property. The only alleged harm to King Ranch's real property interests is the impact the transmission line could have on King Ranch's wildlife-related activities.

remain wild, unconfined, and undomesticated. *Id.* The Alliance does not allege that any of the birds that would be harmed by the transmission line have ever ceased being wild, unconfined, or undomesticated.[15] The Alliance cites to federal case law holding that environmental plaintiffs adequately allege injury in fact for purposes of standing when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 183 (2000); *American Bird Conservancy, Inc. v. Federal Commc'ns Council*, 516 F.3d 1027, 1031 (D.C. Cir. 2008). Whether a plaintiff has standing in federal courts to assert a cause of action is not indicative of the deprivation of a vested property right. *See Cantrell v. City of Long Beach*, 241 F.3d 674, 681 (9th Cir. 2001) ("That the litigant's interest [for purposes of standing] must be greater than that of the public at large does not imply that the interest must be a substantive right sounding in property or contract."). This Court has held that "[a]n injury need not affect 'vested' property rights to confer standing" and, thus, "the harm [for purposes of standing] may be economic, recreational, or environmental." *Texas Rivers Prot. Ass'n v. Texas Natural Res. Conservation Comm'n*, 910 S.W.2d 147, 151-52 (Tex. App.—Austin 1995, writ denied). The Alliance's allegation that its alleged harm would constitute an injury in fact for purposes of standing, therefore, does not suffice as an allegation of a deprivation of a constitutionally protected interest.

Consequently, the interests alleged by the Alliance do not constitute a vested property right sufficient to support a due process claim. Absent any allegation of deprivation of a

---

[15] Indeed, it seems the Alliance's allegation of harm *depends* on the fact that the birds are wild, unconfined, and undomesticated—and thus fit for birdwatching and habitat conservation.

vested property right, the Alliance has not alleged a right to judicial review based on an order that adversely affects a vested property right or otherwise violates a constitutional right. *See Continental Cas. Ins. Co.*, 19 S.W.3d at 397. The district court properly dismissed the Alliance's due process claim for lack of jurisdiction.

### *Conclusion*

We hold that (1) the APA does not provide Coastal Habitat Alliance with a right to judicial review of the denial of its intervention before the Public Utility Commission, (2) sovereign immunity would bar a UDJA claim based on such denial, and (3) the Alliance failed to allege the deprivation of any vested property interest as a result of such denial. Therefore, we affirm the judgment of the district court dismissing the Alliance's claims for lack of subject-matter jurisdiction.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop;
   Concurring and Dissenting Opinion by Justice Patterson

Affirmed

Filed: July 8, 2009

17