The STATE of Texas, Relator,

v.

Dennis THOMAS, Jo Campbell, and Marta Greytok, Commissioners of the Public Utility Commission of Texas, Respondents.

No. C–6880.

Supreme Court of Texas.

Feb. 15, 1989.

Rehearing Denied March 22, 1989.

---

Jim Mattox, Atty. Gen., Lou McCreary, First Asst. Atty. Gen., Steve Baron, Scott McCollough, & Karen Pettigrew, Asst. Attys. Gen., Austin, for relator.

Barry Bishop, David C. Duggins, Mary Joe Carroll, Clark Thomas, Winters & Newton, Joe R. Greenhill, Robert A. Webb, Baker & Botts, Austin, Michael D. McQueen, Kemp, Smith, Duncan & Hammond, El Paso, Lambeth Townsend, General Counsel, PUC, Michael Anderson, Joe N. Pratt, Nancy Leshikar, Redford, Wray & Woolsey, Geoffrey Gay, Public Utility Counsel, Austin, Jonathan Day, Mayor, Day & Caldwell, Hugh Rice Kelly, G. Schalles, III and H. Leven, Houston, Marianne Carroll, Michael G. Shirley, Robert A. Webb, Austin, Mark S. Lewis, Alexandria Va., for respondents.

## ON MOTION FOR REHEARING

MAUZY, Justice.

The court's opinion and judgment of May 25, 1988 is withdrawn and the following is substituted therefor.

The issue in this original proceeding is whether the Attorney General, on behalf of state agencies, has the right to intervene in electric utility rate cases before the Public Utility Commission. Central Power & Light Company and Houston Lighting & Power Company petitioned the Public Utility Commission for preferential accounting treatment for costs related to the South Texas Nuclear Project. The Attorney General, representing state agencies as consumers of electricity, sought to intervene in order to oppose the utilities' petition. The hearings examiners presiding over these rate cases granted the Attorney General's motions to intervene. However, General Counsel for the Commission appealed the examiners' order to the Commission itself [1] and the Commission issued an order reversing the examiners' joint order allowing intervention. The Attorney General has now petitioned this court for a writ of manda-

---

1. We question whether this use of the general counsel's office comports with its statutory authority. See Tex.Rev.Civ.Stat. art. 1446c, § 8(c). However, this is a matter which we need not now consider.

mus to compel the Commission to rescind its order striking his intervention. Because we hold that the Public Utility Commission cannot constitutionally deny the Attorney General's intervention on behalf of consumer state agencies, we grant the writ of mandamus and order the Commission to vacate its order.

Article IV, section 22 of the Texas Constitution sets forth the duties of the Attorney General as follows:

> The Attorney General ... shall represent the State in all suits and pleas in the Supreme Court of the State ... and from time to time, in the name of the State, take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power or demanding or collecting any species of taxes, tolls, freight or wharfage not authorized by law. He shall ... perform such other duties as may be required by law.

In *State v. Southwestern Bell Telephone Co.*, 526 S.W.2d 526 (Tex.1975), we recognized that unreasonably high rates were not lawful and held that this constitutional provision confers on the Attorney General the power "to institute and maintain suit in the name of the State" to prevent a utility company from exacting unreasonably high charges. This is exactly what the Attorney General was attempting to do in this case. He was trying "to institute and maintain suit" to prevent a utility company from charging unreasonable rates.

■ The Commission argues that this constitutional provision only authorizes the Attorney General to take action "in the courts," and not in an agency. However, a ratemaking proceeding is a "contested case" within the meaning of the Administrative Procedure and Texas Register Act and, as such, is a formal adjudicative proceeding in which the agency performs in a quasi-judicial function. Tex.Rev.Civ.Stat. art. 6252–13a, §§ 3(2), 13. In creating the Public Utility Commission, the legislature effectively shifted the forum of original jurisdiction for challenging a utility's rates from the district courts to the agency. *See* Public Utility Regulatory Act, Tex.Rev.Civ.

Stat. art. 1446c. Now, a lawsuit to challenge the reasonableness of a utility's rates can be properly "instituted" only by intervening at the agency level. *See* Tex.Rev. Civ.Stat. art. 6252–13a, § 19. The Attorney General cannot act "to prevent" unlawfully exorbitant rates unless he can begin by intervening before the agency.

This part of article IV, section 22 first appeared in the 1876 Texas Constitution. At that time, we did not have the proliferation of regulatory agencies that we now have. Even the Railroad Commission was not created until 1891. Tex. Const. art. X, § 2, interp. commentary (Vernon 1955). Many disputes that were once litigated in the courts are now, for all practical purposes, litigated in the agencies. That is where the evidence is heard and the record is made. By the time most such disputes reach the courts, they present themselves in a posture more akin to appellate review. *See* Tex.Rev.Civ.Stat. art. 6252–13a, § 19(d)(3). We conclude that article IV, section 22 uses the term "courts" in a generic sense to refer to an adjudicative forum. It is implied within the meaning of this constitutional provision that the Attorney General will be able to take action in the adjudicative forum of first jurisdiction regardless of whether the label attached to that forum is "court" or "agency."

■ Were we to hold that the Attorney General had no right to intervene before the agency, it would mean that the legislature had obliterated a constitutional grant of power merely by statutorily creating an agency to serve the same function as courts once did in adjudicating such disputes. The legislature cannot by statute abrogate the Attorney General's constitutional grant of power. Only by constitutional amendment can the legislature alter the constitutional balance of powers; it cannot do so by legislation. No matter what the language of the Public Utility Regulatory Act, it cannot subtract from the powers granted in the constitution.

■ Furthermore, section 402.023 of the Texas Government Code tracks the language of article IV, section 22, but does not contain any language that could even

arguably limit the Attorney General to action "in the courts." Because article IV, section 22 also imposes on the Attorney General the obligation to "perform such other duties as may be required by law," the more general statutory requirement of section 402.023 becomes a constitutional duty, requiring the Attorney General to act in whatever forum and whatever manner as may be necessary and proper to prevent corporations from exacting unreasonable rates.

We grant the State's motion for rehearing and grant its petition for writ of mandamus. We order the Public Utility Commission to vacate its order denying intervention and to permit the Attorney General to intervene in these electric rate cases.

GONZALEZ, J., files a dissenting opinion.

HECHT, J., files a dissenting opinion in which PHILLIPS, C.J., and COOK, J., join.

GONZALEZ, Justice, dissenting.

The granting or the denial of a plea of intervention before the Public Utilities Commission (PUC) is a discretionary act. Mandamus will not lie to compel the performance of a discretionary act. Thus, I would not withdraw the court's prior opinion which denied the Attorney General's petition for writ of mandamus and I would overrule the motion for rehearing.

Mandamus is an extraordinary writ which should be used *only* when there has been an abuse of discretion or a violation of a clear right possessed by the relator and when there is no other adequate remedy at law. *State v. Walker*, 679 S.W.2d 484, 485 (Tex.1984); *Pat Walker & Co. v. Johnson*, 623 S.W.2d 306, 308 (Tex.1981); *Neville v. Brewster*, 352 S.W.2d 449, 452 (Tex.1961). Since none of the prerequisites for the issuance of the writ are present here, mandamus does not lie.

The Attorney General's office is one of limited powers. The Attorney General may act only if he has constitutional or statutory authority to do so. *Day Land & Cattle Co. v. State*, 68 Tex. 526, 4 S.W. 865, 867 (1887). The Texas Constitution provides in part:

> The Attorney General ... shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party ... and from time to time, in the name of the State, take such action *in the courts* as may be proper and necessary to prevent any private corporation from exercising any power or demanding or collecting any ... tolls ... not authorized by law. He shall ... give legal advice in writing to the Governor and other executive officers, when requested by them, and perform such other duties as may be required by law.

Tex. Const. art. IV, § 22 (emphasis added). As is readily apparent, Article IV, § 22 allows the Attorney General to take action "in the courts." The PUC is not a court, nor is it a functional equivalent of a court.

The powers conferred by the constitution are exclusive and except in a manner authorized by the constitution, these powers cannot be enlarged or restricted. *Garcia v. Laughlin*, 155 Tex. 261, 285 S.W.2d 191, 194 (1955). When we are called upon to interpret the Constitution, we are "not authorized to thwart the will of the people by reading into the Constitution language not contained therein, or by construing it differently from its plain meaning." *Cramer v. Sheppard*, 140 Tex. 271, 167 S.W.2d 147, 154 (1942).

Almost all of the powers granted to the Attorney General have one thing in common—they yoke the Attorney General on the side of the State as its counsel. "The attorney general shall prosecute and defend all actions in which the state is interested before the supreme court and courts of appeals." Tex. Gov't Code Ann. § 402.021 (Vernon Pamphlet 1988). The statutes authorizing the Attorney General to represent state agencies in legal matters include, but are not limited to, the following: Tex.Alco.Bev.Code Ann. § 5.15 (Vernon 1978) (the Attorney General is authorized to defend all suits against the Texas Alcoholic Beverage Commission); Tex.Rev. Civ.Stat.Ann. Title 110B, § 35.203 (Vernon

Pamphlet 1988) (the Attorney General represents the Board of Trustees of the Teacher Retirement System in all litigation); Tex.Rev.Civ.Stat.Ann. art. 3271a, § 23(c) (Vernon Supp.1989) (the Attorney General is authorized to act as legal advisor to the State Board of Registration for Professional Engineers). Nowhere do these grants of power arm the Attorney General with authority to sue the State or any of its agencies.[1] *Hill v. Lower Colorado River Auth.*, 568 S.W.2d 473, 480 (Tex.Civ.App.—Austin 1978, writ ref'd n.r.e.).

The fixing or revision of public utility rates is a legislative function. *State v. Southwestern Bell Tel. Co.*, 526 S.W.2d 526, 529–30 (Tex.1975). The Texas Legislature delegated this function to the PUC and enacted the Public Utility Regulatory Act (PURA), a comprehensive scheme for the regulation of public utilities and the protection of various competing interests. Tex.Rev.Civ.Stat.Ann. art. 1446c, § 2 (Vernon Supp.1989). The PURA was enacted "to protect the public interest inherent in the rates and services of public utilities." *Id.* In order to ensure that the public interest would be adequately presented to the PUC, the Legislature mandated both a General Counsel and an Office of Public Utility Counsel. The statutory duties of the PUC's General Counsel include:

> ... protection and representation of the public interest and coordination and direction of the preparation and presentation of evidence from the commission staff in all cases before the commission as necessary to effect the objectives and purposes stated in this Act and ensure protection of the public interest.

*Id.* § 8(c)(7). Representation of the interests of residential and small commercial consumers is the function of the Office of Public Utility Counsel. *Id.* § 15A. Thus, the Attorney General is not a roving ombudsman with the power to intervene in utility rate cases at will, nor does he have the power to substitute his view for that of the PUC. Even if he did have such powers, there is nothing in the record to show that the Attorney General was requested by any state agency to intervene on its behalf in these rate cases. The right to intervene in agency adjudications is usually controlled by agency enabling acts and agency rules. R. Pierce, Jr., S. Shapiro & P. Verkuil, *Administrative Law and Process* § 5.5 (1985).

Generally, administrative agencies have discretionary power to permit or deny petitions for intervention in administrative agency proceedings. *Railroad Comm'n of Texas v. Ennis Transp. Co.*, 695 S.W.2d 706, 710 (Tex.App.—Austin 1985, writ ref'd n.r.e.); 1 F. Cooper, *State Administrative Law* 325 (1965). Since the PUC had discretion to allow the Attorney General to intervene in these cases, the Attorney General cannot argue that the denial was an abuse of discretion, nor can he argue that he did not have an adequate remedy by appeal. The Attorney General is free to appeal the PUC's order denying intervention as the parties did in *Ennis.*

Furthermore, the court's reliance on *Southwestern Bell* is misplaced. This case is distinguishable on its facts. There was no PUC or other equivalent regulatory agency in existence when *Southwestern Bell* was decided.[2] In *Southwestern Bell,* the utility company unilaterally announced an increase in intrastate long distance telephone rates and the Attorney General sought to temporarily enjoin the effectuation of these rates until a full hearing could be held. He argued that the action by the utility company was the equivalent of "demanding or collecting" a rate "not autho-

---

1. *But see Public Util. Comm'n of Texas v. Cofer,* 754 S.W.2d 121 (1988). We should not compound a problem created by the Legislature which passed legislation that allows the PUC and the State Purchasing and General Services Commission to be represented by the Attorney General, even when they occupy opposite sides of the docket. Hopefully, the Legislature will correct this problem.

2. As the court noted in *Southwestern Bell,* 526 S.W.2d at 528 n. 1, House Bill 819 of the 64th Texas Legislature created the PUC, under which Southwestern Bell, as well as other utilities, became statutorily regulated. The regulatory commission did not, however, assume its duties until January 1, 1976, and its jurisdiction over rates of public utilities was postponed until September 1, 1976.

rized by law." *See* Tex. Const. art. IV, § 22. We held that under the "toll" provision, the Attorney General had the constitutional authority to seek injunctive relief. In reaching its conclusion, the court reasoned as follows:

> [I]t is held that *in the absence of rate regulation by some authorized body,* state or municipal, the telephone company may prescribe and apply its own rates, subject to the dictates of reasonableness and justice [citations omitted]. This legal obligation upon the telephone company—that of not exacting exorbitant or unreasonable charges for its services—would be meaningless if there were not judicial redress for its violation.

*Southwestern Bell,* 526 S.W.2d at 529 (emphasis added).

Our holding in *Southwestern Bell* stands for the proposition that in *absence* of state regulation, the Attorney General may resort to the courts to oppose a rate increase not authorized by law. We had no occasion to consider in that case whether the Attorney General would have the right, in the *presence* of state regulation, to intervene in the regulatory process itself in order to challenge a request for a rate increase.

In the case now before us, several utility companies filed requests for rate increases with the PUC. It is erroneous to conclude, as the court has done, that the act of filing for a rate increase before the PUC is tantamount to the utility company demanding an unlawful rate, thereby providing the predicate for intervention by the Attorney General into the rate process. This is an unjustified and illogical extension of our holding in *Southwestern Bell.*

The PURA prohibits a utility from making any unauthorized changes in its rates. Tex.Rev.Civ.Stat.Ann. art. 1446c, § 43 (Vernon Supp.1989). In the event that the utility should increase rates without authorization, the Attorney General may institute appropriate court proceedings to enjoin such action and impose statutory penalties. *Id.* §§ 71, 72. The enforcement provisions clearly recognize the right and

duty of the Attorney General to "prevent the exercise by a corporation of a power not conferred by law." *Southwestern Bell,* 526 S.W.2d at 531. On the other hand, when the utility properly submits itself to the regulatory authority, the Attorney General has no constitutional or statutory role in the regulatory process. If the Legislature had intended the Attorney General to have a role in protecting the public interest in the regulatory process itself, it would have so provided. *Cf.* Tex. Ins.Code Ann. art. 1.09–1(b) (Vernon Supp. 1989) (Attorney General authorized to intervene in the public interest in insurance rate hearings). However, in failing to provide for a role for the Attorney General, the PURA does not in any way detract from the Attorney General's power to oppose a demand or collection of an *unauthorized* rate. Tex. Const. art. IV, § 22; *see also* Tex. Gov't Code Ann. §§ 402.021, 402.023(b) (Vernon Pamphlet 1988).

In summary, the Attorney General has no constitutional or statutory right to intervene in these rate cases without the consent of the PUC. The court ignores the plain meaning of the words used in the constitution and prior pronouncements of this court, e.g., *Day Land & Cattle Co.* and *Laughlin,* to reach this result. Furthermore, none of the prerequisites for the issuance of a writ of mandamus are present here. For these reasons I dissent.

HECHT, Justice, dissenting.

Today the Court holds that the Attorney General has a constitutional right to intervene in proceedings before the Public Utility Commission. In fact, the Attorney General claims no such right in this case. He claims only the right to provide legal representation to various state agencies before the PUC. Those agencies, not the Attorney General, claim the right to intervene in PUC proceedings. Thus, the Court confers upon the Attorney General a right he does not claim, and one I believe he does not possess. Furthermore, the Court issues its writ of mandamus [1] even though the strict

---

1. The Court does not extend the PUC the courtesy usually afforded respondents in mandamus

cases of issuing the writ only on the condition

prerequisites to such extraordinary relief have not been, and I believe cannot be, demonstrated. Finally, the Court grants this extraordinary relief in an unprecedented case: an action by the State, represented by the Attorney General, against a state agency, also represented by the Attorney General. In effect, the State has sued itself, the Attorney General has argued against himself, and each has both won and lost. Nonlawyers certainly, and perhaps lawyers as well, will wonder at such a case; the Court does not even comment on these most unusual circumstances.

I would deny mandamus in this case because neither of the two prerequisites to such relief has been met. Specifically, the PUC's action challenged by the State was discretionary and not in violation of any duty upon the commission; and there is another remedy, appeal, fully adequate to redress any wrong done here. I agree with the result reached by the Court in its prior opinion, but not entirely with its reasoning. I would consider granting relator's motion for rehearing only to alter the basis for the Court's prior ruling. Because the Court today goes further and reverses itself altogether, I respectfully dissent.

### I

The Attorney General neither claims nor possesses a constitutional right to intervene himself in proceedings before the Public Utility Commission.

### A

In two related proceedings before the PUC, Central Power and Light Company and Houston Lighting and Power Company requested deferred accounting treatment

of certain costs of the South Texas Nuclear Project.[2] In an unrelated proceeding, Southwestern Electric Power Company applied to the PUC for allowance of certain refunds.[3] In each of these three PUC ratemaking proceedings, a number of entities referring to themselves collectively as "The Texas State Agencies" petitioned to intervene as customers of the respective utility involved. These self-styled "state agencies" included various state departments, commissions, hospitals and universities.[4] The Attorney General claims to represent all these entities in these proceedings.[5]

The hearing examiner in each case granted the petition in intervention, and the general counsel appealed to the commission. In its order issued October 7, 1987, the commission reversed the hearing examiners and refused to allow the "state agencies" to intervene. Specifically, the commission concluded that the right to intervene was reserved to "persons" or "affected persons" as defined by either the Public Utility Regulatory Act ["PURA"], Tex.Rev. Civ.Stat.Ann. art. 1446c, § 3(a), (h) (Vernon Supp.1989), the Administrative Procedure and Texas Register Act ["APTRA"], Tex. Rev.Civ.Stat.Ann. art. 6252–13a, § 3(6) (Vernon Supp.1989), or the Public Utility Commission's Rules of Practice and Procedure, Tex.Admin.Code tit. 16, § 21.2 (1988). Inasmuch as the "state agencies" did not fall within any of these definitions, the PUC concluded that they were not entitled to intervene but could appear as "protestants". The commission further concluded that the Attorney General's representation of the "state agencies" before the PUC created an irreconcilable conflict of interest with his duty to represent the PUC before the state courts. The commission there-

---

that the respondent fails to comply with the Court's directive.

2. The proceeding involving Central Power and Light Company was designated docket no. 7560; the one involving Houston Lighting and Power Company was designated docket no. 7582.

3. This was designated docket no. 7635.

4. The parties have not addressed the differences in the natures of the various entities but have consistently referred to them all as "state agencies". I therefore do not consider whether each

of the entities qualifies as an agency of the State.

5. There is some doubt whether the Attorney General actually does represent all the "state agencies" he claims to represent in these proceedings. The Railroad Commission, one of the entities listed among the "state agencies", has advised that it has not authorized the attorney general to represent it in the PUC proceedings involved in this case.

fore ordered that the Attorney General not appear as legal counsel for the "state agencies". Since that order the commission has indicated that it may rule similarly in other cases in which "state agencies" represented by the Attorney General seek to intervene.

It is thus rather plain from the record that the Attorney General has attempted, not to intervene in PUC proceedings himself,[6] but to represent "state agencies" as intervenors. Nevertheless, the Court states the issue as "whether the Attorney General, on behalf of state agencies, has the right to intervene in electric utility rate cases before the Public Utility Commission." The Court addresses "the Attorney General's intervention", not the "state agencies'" intervention. With all due respect, this is simply not the issue presented in this case.

### B

Even if the Attorney General had asserted a constitutional right to intervene in the pending PUC proceedings, I would hold that he has no such right.

The powers of the office of Attorney General are limited. The Attorney General may act only if he has constitutional or statutory authority to do so. *Day Land & Cattle Co. v. State,* 68 Tex. 526, 4 S.W. 865, 867 (1887). The authority upon which the Attorney General relies in this case is article IV, section 22 of the Texas Constitution, which states in pertinent part:

> The Attorney General . . . shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party, . . . and from time to time, in the name of the State, take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power or demanding or collecting any . . . tolls . . . not authorized by law. He shall . . . give

legal advice in writing to the Governor and other executive officers, when requested by them, and perform such other duties as may be required by law.

The Court holds that the Attorney General's intervention in the PUC proceedings is, within the meaning of this provision, an action in the courts necessary to prevent private corporations, i.e., utilities, from demanding or collecting tolls not authorized by law.

The only support the Court offers for its conclusion that the Attorney General's actions before the PUC are the type of actions authorized by this constitutional provision is *State v. Southwestern Bell Telephone Co.,* 526 S.W.2d 526 (Tex.1975). In that case, antedating state regulation of telephone utilities,[7] Bell simply announced an increase in intrastate rates to go into effect a month later. This Court upheld the Attorney General's constitutional right under article IV, section 22 to sue to enjoin Bell's collection of such rates upon a showing that they were unreasonable. We did not consider in that case the role of the Attorney General with respect to regulated utilities. The Court does not explain today how applying for administrative approval of rates, as the utilities are doing in the cases now pending before the PUC, is equivalent to "demanding or collecting" unauthorized rates under the constitution. The utilities involved in this case are not collecting unlawful rates; they are seeking approval of rates as required by law. I find nothing in *Southwestern Bell* that mandates the Attorney General's participation in such proceedings.

To attempt to surmount the rather obvious difficulty that the PUC is not a "court", in which the constitution authorizes the Attorney General to take action, the Court first characterizes ratemaking proceedings as quasi-judicial. The PUC proceedings in which the "state agencies"

---

**6.** The Attorney General did include himself among the "state agencies" seeking intervention in at least one of the proceedings in issue. In so doing, however, he asserted an interest similar to the other entities—that is, as a consumer of electricity produced by the utility involved in the case. The record does not reflect that the

Attorney General ever asserted a constitutional right of intervention in PUC proceedings.

**7.** The Public Utility Commission was not created until after the events giving rise to the *Southwestern Bell* case. 526 S.W.2d at 528 n. 1.

have attempted to intervene in the instant case involve the setting of future rates. We have previously held, however, again in *Southwestern Bell,* the single case cited by the Court, that ratemaking is not a judicial act but a legislative act:

> Of course, the fixing or revision of rates is not a judicial function and under our system of separation of powers the courts do not and cannot regulate rates of public utilities; but the determination of whether rates fixed by the utility are unreasonably high is a judicial function.

*Id.* at 529. The Court does not address this language. Brushing aside the plain fact that the PUC is not a court but an administrative agency, the Court simply pronounces that "courts" in article IV, section 22 of the Texas Constitution means any adjudicative forum.

The Court also argues that if the Attorney General is not allowed to intervene in PUC proceedings, then he cannot appeal the commission's orders and therefore cannot prevent utilities from charging exorbitant rates. The Court, however, does not explain why the Attorney General's constitutional mandate is not fully provided for in sections 71 and 72 of PURA, which direct the Attorney General to institute judicial proceedings against utilities and others which fail to comply with the rules and orders of the PUC. Section 43 of PURA forbids a utility from changing its rates except with PUC approval. In short, the Court simply does not show, and I fail to see, how denying the Attorney General leave to intervene in PUC proceedings—it must be remembered that he has not attempted to intervene himself—deprives him of a constitutional right.

## II

The Court assumes, without discussion, the availability of mandamus in this case. Elementarily, mandamus is an extraordinary remedy available only when both of two prerequisites are clearly established. First, relator must show either a clear abuse of discretion or a violation of his clear right. Second, relator must show that there is no other adequate remedy at law. *State v. Walker,* 679 S.W.2d 484, 485 (Tex.1984); *Neville v. Brewster,* 352 S.W. 2d 449, 452 (Tex.1961). In my view, neither the Attorney General nor the "state agencies" have demonstrated either of the two prerequisites to mandamus relief in this case.

### A

Under the PUC's Rules of Practice and Procedure, intervention is permissive, not mandatory. Tex.Admin.Code tit. 16, § 21.41 (1988). Neither the Court nor the Attorney General contends that the PUC must allow any state agency to intervene in any proceeding. Why the PUC's refusal to allow the "state agencies" to intervene in the proceedings in issue here was a denial of their clear right or a clear abuse of discretion is simply unanswered by the Court.

### B

PURA does not specify whether the PUC's denial of a petition in intervention is subject to judicial review, and the issue does not appear to have been addressed in Texas. Other jurisdictions have consistently held in administrative law contexts similar to Texas' that judicial review is allowed of an interlocutory administrative order denying intervention. In *Public Service Commission of New York v. Federal Power Commission,* 284 F.2d 200, 204 (D.C.Cir. 1960), the court held that the FPC's denial of a request to intervene was an appealable order under the federal administrative law, stating:

> We think a would-be intervenor is aggrieved, within the meaning of the statute, when his application to intervene is denied. It is true that he is not then aggrieved in the sense that a determination has been made on the merits contrary to his interests. But he most certainly is aggrieved in the sense that his right to represent his interest before the Commission has been finally determined.

*Accord, Thermal Ecology Must Be Preserved v. Atomic Energy Commission,* 433 F.2d 524, 526 (D.C.Cir.1970). In *Pennsylvania Dental Ass'n v. Commonwealth In-*

*surance Dept.,* 512 Pa. 217, 516 A.2d 647, 652 (1986), the court not only held that a denial of intervention in administrative proceedings was appealable, it also held that because such an order was appealable, mandamus was not available to compel the agency to allow intervention. An administrative order denying intervention was also held to be appealable in *In re Vermont Public Power Supply Authority,* 140 Vt. 424, 440 A.2d 140 (1982). At least one commentator has urged that such orders be appealable. D. Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators,* 81 Harv.L.Rev. 721, 748–751 (1968).

The PUC's order in this case was final as to the "state agencies" which sought to intervene. Although the order permitted them to adduce evidence in the proceedings, it denied them cross-examination and discovery, severely restricting their participation in the proceedings. I would hold that the "state agencies" were not required to await the PUC's final orders in the proceedings before seeking judicial review. Because they had an adequate remedy at law, they are not entitled to mandamus.

### III

The breadth of the Court's opinion is troubling. Unless PUC proceedings can be distinguished from those of other agencies, the Court in effect holds that the Attorney General is entitled as a matter of constitutional right to intervene in all agency proceedings in which "any private corporation [seeks to exercise] any power or [demands or collects] any ... tolls ... not authorized by law." This appears to be a most significant increase in the Attorney General's authority. Moreover, it is unclear to me under what circumstances the Court would now allow a party other than the Attorney General to mandamus an agency in the midst of administrative proceedings. Most troubling to me, and never mentioned by the Court, is whether there is any restriction against the State suing its own agency, or on the Attorney General's representation of both sides of such a suit. I recognize that we have only recently held in *Public Utility Commission v. Cofer,* 754

S.W.2d 121 (Tex.1988), that the Attorney General not only can but must represent opposing state agencies in the courts when statutorily mandated to do so, at least absent irremediable conflict in such representation. The holding in that case, however, was expressly premised on clear statutory mandates absent in this case. Even in *Cofer,* a mandamus proceeding by the PUC against a district court, we did not have a direct action by the State against itself, as we do here. I regret that the anomalous circumstances of *Cofer* appear to have been extended without careful analysis of the consequences. After today, however, one is left to wonder what other state agencies and officials may sue one another, and how many opposing agencies the Attorney General may represent.

The uncertainty as to the consequences of the Court's opinion is due, in my view, to its failure to focus on the issues in this case. Those issues are, very simply, whether "state agencies" are "persons" entitled to intervene in PUC proceedings, as that term is defined in PURA and APTRA, whether the Attorney General may represent them in such proceedings, and whether mandamus is an appropriate remedy in such a case. In its prior opinion the Court upheld the PUC's ruling that the "state agencies" in this case are not "persons" as defined by statute and cannot therefore intervene. I am troubled by this aspect of the Court's prior opinion and would be inclined to grant the State's motion for rehearing to reconsider it. Before doing so, however, I would want to consider the propriety of this action and the availability of the relief sought. I do not join in granting the motion for rehearing to recast the issues and decide a case that I respectfully submit is not presented. I therefore dissent from the grant of rehearing in this case.

PHILLIPS, C.J., and COOK, J., join in this dissenting opinion.