TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00205-CV






Coastal Habitat Alliance, Appellant


v.


Public Utility Commission of Texas; Barry T. Smitherman, Chairman;

Kenneth W. Anderson, Jr., Commissioner; Donna L. Nelson, Commissioner;

Texas Gulf Wind LLC; PPM Energy, Inc.; and AEP Texas Central Company, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT

NO. D-1-GN-07-004164, HONORABLE DARLENE BYRNE, JUDGE PRESIDING





O P I N I O N


 At issue in this case is the district court's subject-matter jurisdiction to review
the Public Utility Commission's denial of a motion to intervene in a proceeding before the
Commission. The Commission denied appellant Coastal Habitat Alliance's motion to intervene in
the Commission's consideration of an electric utility's application to amend its certificate of
convenience and necessity. The Alliance filed suit in district court in an attempt to appeal or
challenge the order denying the request to intervene. The district court dismissed the Alliance's
lawsuit for lack of subject-matter jurisdiction. We hold that the Administrative Procedure Act does
not authorize a non-party such as the Alliance to independently pursue judicial review of a
final order or decision of the Public Utility Commission. We also hold dismissal of the Alliance's
claim for declaratory relief to be proper because, by statute, the denial of the Alliance's intervention
was a matter committed to the Commission's discretion. Although a constitutional due process
claim may be asserted by a non-party to an administrative proceeding, the Alliance has failed
to allege the deprivation of a vested property right as a result of the denial of its intervention. We
affirm the judgment of the district court.


Factual and Procedural Background

 On June 25, 2007, appellee AEP Texas Central Company (AEP TCC) filed with
the Public Utility Commission of Texas an application to amend its certificate of convenience
and necessity (CCN) to construct, own, and operate a 21.6-mile, 345-kilovolt, double-circuit
transmission line on Kenedy Ranch in Kenedy County. The transmission line is intended to
interconnect two proposed wind generation facilities to be constructed on the ranch. On August 9,
2007, appellant Coastal Habitat Alliance filed a motion to intervene in the Commission's review of
AEP TCC's application. The Alliance is an association of landowners and environmental groups
formed for the purpose of protecting their environmental interests in the coastal region on which the
transmission line would be located. (1) The motion to intervene alleged "adverse effects of this project
on coastal wetlands, flora and fauna in the region, and endangered and migratory species."

 The Commission denied the Alliance's motion to intervene on September 7, 2007,
concluding that the Alliance had not shown a justiciable interest in the proceeding. The Alliance
timely filed an appeal of the denial to the Commission, see 16 Tex. Admin. Code § 22.123(a)(2)
(2009) (Pub. Util. Comm'n, Appeal of an Interim Order and Motions for Reconsideration of Interim
Order Issued by the Commission), and the Commission issued a written order denying the appeal
on October 29, 2007. The Alliance then filed a motion for reconsideration, see id. § 22.123(b), but
no commissioner placed the motion on the agenda for an open meeting, causing the motion to be
overruled by operation of law as of November 13, 2007, see id. § 22.123(b)(6)(A).

 On November 27, 2007, the Commission issued a Notice of Approval granting
AEP TCC's application to amend its CCN. On December 4, 2007, the Alliance filed suit in
district court against the Commission, as well as Chairman Barry T. Smitherman and Commissioners
Julie C. Parsley and Paul Hudson in their official capacities, (2) seeking reversal of the order denying
its motion to intervene and seeking to vacate the administrative approval of the underlying CCN
based on the claim that the denial of the Alliance's request to intervene was improper. In its original
petition, the Alliance asserted that the denial of its intervention violated the Texas Utility Code
and the Alliance's right to due process and due course of law, and sought declaratory relief under
the Administrative Procedure Act, mandamus relief, and injunctive relief. (3)

 By agreement among the parties, a hearing on the merits was set for March 5, 2008,
in the district court. On February 21, 2008, AEP TCC and the Commission filed pleas to the
jurisdiction seeking dismissal of the lawsuit. On March 4, 2008, the Alliance filed a response to the
pleas to the jurisdiction, and filed a motion for leave to file an amended petition, by which the
Alliance sought to add a claim for relief under the Uniform Declaratory Judgments Act as an
additional basis for declaratory relief. Following the March 5 hearing on these pre-trial motions, the
district court, on March 6, 2008, denied the Alliance's motion to amend its original petition, granted
the pleas to the jurisdiction, and dismissed the Alliance's lawsuit. Coastal Habitat Alliance appeals.


Analysis

 A plea to the jurisdiction challenges the trial court's authority to determine the
subject matter of a specific cause of action. See Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 553-54 (Tex. 2000). Whether a court has subject-matter jurisdiction and whether a plaintiff has alleged
facts that affirmatively demonstrate subject-matter jurisdiction are questions of law that we review
de novo. Texas Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). In
deciding a plea to the jurisdiction, we are not to weigh the merits of the plaintiff's claims beyond the
extent necessary to determine jurisdiction, but are to consider the plaintiff's pleadings, construed in
the plaintiff's favor, and evidence pertinent to the jurisdictional inquiry. Id. at 227-28; County of
Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002).

 In this lawsuit, Coastal Habitat Alliance seeks judicial review of the Commission's
interlocutory order denying the Alliance's motion to intervene. "It is well recognized under
Texas law that there is no right to judicial review of an administrative order unless a statute provides
a right or unless the order adversely affects a vested property right or otherwise violates a
constitutional right." Continental Cas. Ins. Co. v. Functional Restoration Assocs., 19 S.W.3d 393,
397 (Tex. 2000) (citing Stone v. Texas Liquor Control Bd., 417 S.W.2d 385, 385-86 (Tex. 1967)). 
The Alliance argues that it has a right to judicial review based on (1) the Administrative Procedure
Act, (2) the Uniform Declaratory Judgments Act, and (3) the constitutional right of due process and
due course of law.


 Administrative Procedure Act

 The Alliance has a right to judicial review of an administrative order if a statute
provides that right. See id. The Alliance asserts that the Administrative Procedure Act (APA) (4) gives
the district court jurisdiction over the Alliance's lawsuit that amounts to an appeal of the denial
of its request to intervene. Section 2001.171 of the APA states as follows: "A person who has
exhausted all administrative remedies available within a state agency and who is aggrieved by a final
decision in a contested case is entitled to judicial review under this chapter." Tex. Gov't Code Ann.
§ 2001.171 (West 2008). The Texas Supreme Court has held that section 2001.171 provides an
independent right to judicial review of a decision in a contested case. See Texas Dep't of Protective
& Regulatory Servs. v. Mega Child Care, Inc., 145 S.W.3d 170, 173 (Tex. 2004). However, the
supreme court limited its holding to situations in which the agency's enabling statute "neither
specifically authorizes nor prohibits judicial review of the decision." Id.

 The Public Utility Regulatory Act (PURA) (5) specifically authorizes review of
decisions by the Commission. Section 15.001 of the PURA provides that "[a]ny party to a
proceeding before the commission is entitled to judicial review under the substantial evidence rule." 
Tex. Util. Code Ann. § 15.001 (West 2007). However, the Alliance was not a party to the
Commission's review of AEP TCC's application because the Alliance's attempt to intervene
was denied. The APA defines a "party" as "a person or state agency named or admitted as a party." 
Tex. Gov't Code Ann. § 2001.003(1) (West 2008). The Alliance was neither named nor admitted
as a party. The Commission's rules reach the same result, providing that parties to a proceeding
include applicants and complainants, respondents, intervenors, and commission staff representing
the public interest, see 16 Tex. Admin. Code § 22.102(a) (2009) (Pub. Util. Comm'n, Classification
of Parties), but "[a]ny person that has not intervened in a proceeding, or who has been denied
permission to intervene, shall not be considered a party," id. § 22.102(c). The Alliance was not
allowed to intervene. Therefore, the PURA specifically authorizes judicial review of a proceeding
before the Commission, but in a manner that excludes an entity--such as the Alliance--who is not
a party to the proceeding.

 Based on the supreme court's holding in Mega Child Care--that APA
section 2001.171 provides an independent right to judicial review in situations in which the agency's
enabling statute "neither specifically authorizes nor prohibits judicial review of the decision," see
145 S.W.3d at 173--this Court has held that an independent right to judicial review under the APA
applies only "when the agency's enabling act is silent" as to judicial review, see West v. Texas
Comm'n on Envtl. Quality, 260 S.W.3d 256, 260-61 (Tex. App.--Austin 2008, pet. denied). The
PURA is not silent on this matter. It specifically authorizes judicial review only for parties. See
Tex. Util. Code Ann. § 15.001. We, therefore, hold that a non-party to a proceeding before
the Commission is not statutorily entitled to judicial review of the Commission's decision to
deny intervention under either the PURA or the APA. (6) This holding is consistent with this Court's
determination in a prior case that a non-party has no statutory right to judicial review of a decision
by the Public Utility Commission:


The [plaintiff] did not participate in the administrative hearing in any capacity before
the Commission issued its decision and did not obtain permission to intervene in the
administrative proceeding; the [plaintiff], therefore, was not a party to the proceeding
and does not have a statutory right to judicial review of the Commission's decision.


City of Port Arthur v. Southwestern Bell Tel. Co., 13 S.W.3d 841, 844 (Tex. App.--Austin 2000,
no pet.) (citing Tex. Util. Code Ann. § 15.001; 16 Tex. Admin. Code § 22.102(c)). (7)

 PURA section 15.001 authorizes only a party to obtain judicial review of a proceeding
before the Commission. See Tex. Util. Code Ann. § 15.001. The Alliance was not a party to
the administrative proceeding below. See 16 Tex. Admin. Code § 22.102(c). Consequently, the
Alliance has no statutory right under the APA to judicial review of the Commission's order denying
the Alliance's intervention. (8)


 Uniform Declaratory Judgments Act

 Coastal Habitat Alliance next asserts that the Uniform Declaratory Judgments Act
(UDJA) (9) provides a statutory right to judicial review of the administrative order denying its motion
to intervene. The UDJA provides that a person whose rights, status, or other legal relations are
affected by a statute may have determined any question of construction or validity arising under the
statute, and may obtain a declaration of rights, status, or other legal relations thereunder. Tex. Civ.
Prac. & Rem. Code Ann. § 37.004(a) (West 2008). The Alliance contends that the district court has
jurisdiction over the Alliance's UDJA claim because it seeks the proper construction of PURA
section 37.054(b) and a declaration that the Alliance is entitled to intervene in accordance with that
statute. Section 37.054(b) of the PURA governs a person's ability to intervene in the Commission's
consideration of a utility's application to amend a CCN. See Tex. Util. Code Ann. § 37.054(b)
(West 2007). Specifically, that section provides that a person "interested in the application" may
intervene. Id.

 The Alliance's request for declaratory relief in its original petition did not contain a
reference to the UDJA. (10) The Alliance sought to amend its pleadings to reference the UDJA, but the
district court denied the motion. Appellees argue that the Alliance's motion for leave to amend its
pleadings, which was filed the day before the scheduled hearing on the merits, was properly denied
because the amendment "operated as a surprise" to appellees, see Tex. R. Civ. P. 63, and would have
reshaped the Alliance's cause of action, see Hardin v. Hardin, 597 S.W.2d 347, 349 (Tex. 1980). 
The Alliance counters that its original petition contained sufficient facts and arguments to constitute
a UDJA claim and the amendment merely supplied the proper statutory citation. A decision to deny
an amendment to the pleadings that is not mandatory may be reversed only if it is a clear abuse
of discretion. State Bar v. Kilpatrick, 874 S.W.2d 656, 658 (Tex. 1994). We need not determine
whether the district court's denial of the Alliance's motion to amend its pleadings was an abuse of
discretion, however, because we determine that appellees' pleas to the jurisdiction would have been
properly granted as to the Alliance's UDJA claim.

 Private parties may seek declaratory relief against state officials who allegedly act
without legal or statutory authority. City of El Paso v. Heinrich, No. 06-0778, 2009 Tex. LEXIS
253, at *4-5 (Tex. May 1, 2009); Texas Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d
849, 855 (Tex. 2002). A justiciable controversy regarding whether a state agency or official has
acted beyond its statutory authority provides a jurisdictional basis for a UDJA action seeking
statutory construction of that authority. Texas Dep't of Ins. v. Reconveyance Servs., Inc., 240 S.W.3d
418, 428 (Tex. App.--Austin 2007, pet. filed). However, a suit that seeks to control a state official's
exercise of discretion within his legal authority is a suit to control state action, which is barred
by sovereign immunity absent legislative consent. McLane Co. v. Strayhorn, 148 S.W.3d 644, 649
(Tex. App.--Austin 2004, pet. denied); see Heinrich, 2009 Tex. LEXIS 253, at *9 (suit alleging
violation of statute "leaving no room for discretion" is not barred).

 Therefore, if the Commission's denial of the Alliance's motion to intervene
was a valid exercise of discretion, the Alliance's UDJA claim is barred by sovereign immunity. In
Railroad Commission v. Ennis Transportation Co., this Court recognized that generally "the
allowance or denial of petitions for intervention in administrative proceedings rests in the discretion
of the agency." 695 S.W.2d 706, 710 (Tex. App.--Austin 1985, writ ref'd n.r.e.). The plaintiffs
in Ennis Transportation were contract carriers who had appealed an agency's denial of their
participation as parties to an administrative proceeding, and the trial court had concluded that the
carriers were "interested parties" who were entitled to so participate. See id. at 708-09. This Court
reversed the district court's judgment, holding that while the agency could allow the carriers to
intervene, it was not compelled to do so. See id. at 711-12. (11)

 Section 37.054(b) of the PURA provides that a "person or electric cooperative
interested in the application may intervene at the hearing." Tex. Util. Code Ann. § 37.054(b). (12) The
Alliance contends that because section 37.054(b) of the PURA uses the permissive verb "may" with
the interested person as the subject, a person claiming an interest holds the discretion regarding
his intervention, not the Commission. According to the Alliance's construction, section 37.054(b)
mandates that the Commission comply with such a person's exercise of discretion to intervene.

 However, the Alliance's statutory construction conflicts with this Court's analysis
in Ennis Transportation. In that case, the governing statute--the Motor Carrier Act--provided that
interested parties "may appear" in the proceeding. See Act of March 13, 1929, 41st Leg., R.S.,
ch. 314, § 12, 1929 Tex. Gen. Laws 698, 703 (repealed by Act of May 24, 1995, 74th Leg., R.S.,
ch. 705, § 31(a)(4), 1995 Tex. Gen. Laws 3719, 3740). Nevertheless, this Court stated that it had
"not been shown a provision of the Motor Carrier Act . . . requiring the [agency] to allow the contract
carriers to appear and protest applications for service." 695 S.W.2d at 710. In addition, the agency
had adopted a rule of practice stating that a party in interest "may appear in any proceeding" before
the agency. Id. at 711. Again, this Court concluded from this language that there was "no rule
specifically requiring the [agency] to allow" the intervention requested. Id. at 711-12. This Court's
interpretation of the applicable statute and rule in Ennis Transportation was based on the fact that
the term "party in interest" was not defined in the agency's rules and, therefore, the agency was
not compelled to allow a person claiming an interest to intervene. Id. The same reasoning applies
here. Even if we were to agree that PURA section 37.054(b)'s use of "may" places discretion in the
hands of an interested person, we would still hold that the Commission has discretion to determine
whether a person is in fact "interested" in the first place. Based on this Court's holding in Ennis
Transportation, we conclude that whether the Alliance is "interested" so as to be able to intervene
in the administrative proceeding below was a matter within the Commission's discretion.

 Under the amended petition filed by the Alliance, the Alliance sought a declaration
under the UDJA that the Notice of Approval is void and that the Commission must allow the
Alliance's participation as a party in the review of AEP TCC's application. Given that the denial
of the Alliance's intervention was a discretionary act, this UDJA claim is an "attempt to exert control
over the state," which is barred by sovereign immunity. See Heinrich, 2009 Tex. LEXIS 253, at *11
(ultra vires exception to sovereign immunity does not include complaint over government officer's
exercise of discretion); North Alamo Water Supply Corp. v. Texas Dep't of Health, 839 S.W.2d
455, 459 (Tex. App.--Austin 1992, writ denied) ("The fact that the [agency] might decide 'wrongly'
in the eyes of an opposing party does not vitiate the agency's jurisdiction to make an initial
decision."). Therefore, the UDJA does not provide the Alliance with a right to judicial review of the
Commission's administrative order. We affirm the dismissal of the Alliance's claim for declaratory
relief for lack of jurisdiction.


 Due Process

 Under Texas law, a party may have a right to judicial review of an administrative
order if the order adversely affects a vested property right or otherwise violates a constitutional right. 
Continental Cas. Ins. Co., 19 S.W.3d at 397; see Public Util. Comm'n v. Pedernales Elec. Coop.,
Inc., 678 S.W.2d 214, 222 n.6 (Tex. App.--Austin 1984, writ ref'd n.r.e.) (noting that even if
legislature denies judicial review of agency action, judicial review is available for deprivation of
property without due process). Coastal Habitat Alliance contends that the Commission's denial of
the Alliance's intervention deprived it of its constitutional right to due process, see U.S. Const.
amend. XIV, § 1, and due course of law, see Tex. Const. art. I, § 19. Procedural due process requires
notice and "an opportunity to be heard at a meaningful time and in a meaningful manner." 
University of Tex. Med. Sch. v. Than, 901 S.W.2d 926, 930 (Tex. 1995) (citing Mathews v. Eldridge,
424 U.S. 319, 333 (1976)). (13) The Alliance asserts that the denial of its intervention violated its right
to due process because it was unable to participate in a meaningful manner, including the conduct
of discovery, the introduction of evidence at a hearing, and the cross-examination of witnesses.

 Before considering what process is due, however, our first inquiry in a procedural due
process claim is whether the plaintiff has been deprived of a property or liberty interest deserving
protection under the federal and state constitutions. If a plaintiff fails to allege the deprivation of
such an interest, the plaintiff has failed to allege a due process claim. See Spring Branch Indep. Sch.
Dist. v. Stamos, 695 S.W.2d 556, 560-61 (Tex. 1985); City of Arlington v. Centerfolds, Inc.,
232 S.W.3d 238, 248-49 (Tex. App.--Fort Worth 2007, pet. denied).

 The Alliance argues that, as an interested entity in the administrative proceedings, it
had a vested interest in seeking a hearing and in participating as a party to protect its interests. 
However, we have already determined that the denial of the Alliance's motion to intervene--and,
specifically, the determination that the Alliance was not an "interested" person--was a matter of
the Commission's discretion. See Ennis Transp., 695 S.W.2d at 710. Therefore, a person's desire
to intervene in a proceeding before the Commission is not a vested property interest entitled
to protection under the federal and state constitutions. See Weatherford v. City of San Marcos,
157 S.W.3d 473, 483-84 (Tex. App.--Austin 2004, pet. denied) (finding no vested property right
in rezoning application, which is legislative act subject to discretion of city). The Alliance must
demonstrate a vested property interest that will be deprived by the denial of its intervention in the
proceeding other than its interest or desire to intervene. See Pickell v. Brooks, 846 S.W.2d 421, 426
(Tex. App.--Austin 1992, writ denied) ("[P]rocedural due-process analysis protects only what
actually belongs to the individual, rather than recognizing that unfairness exists in the very act
of disposing of an individual's situation without allowing the individual to participate in some
meaningful way.").

 The Alliance contends that it possesses property rights that will be harmed by the
proposed transmission line's impact on wildlife. According to the Alliance, the transmission line
and its associated wind farms would disrupt a "unique and vital migratory bird corridor" and could
destroy a "known endangered species habitat," and these consequences would, in turn, impair
the Alliance's members' interests in wild bird conservation and birdwatching. One member of the
Alliance, King Ranch, is an adjacent property owner to Kenedy Ranch, and its president alleges the
proposed transmission line's threat to wildlife habitat will impair the profitability of King Ranch's
birdwatching, wildlife tourism, and hunting expeditions on its property. (14) Similarly, the chairman
of the board of trustees of the Lower Laguna Madre Foundation (another member of the Alliance)
alleges potential harm to his financial interests in leading birdwatching tours on the coast.

 The Alliance cites no authority for its proposition that a vested property right may
exist in wildlife, or in the viewing, enjoyment, or hunting thereof. On the contrary, under state law,
no vested property interest exists in wild animals. Hollywood Park Humane Soc'y v. Town of
Hollywood Park, 261 S.W.3d 135, 140 (Tex. App.--San Antonio 2008, no pet.). Wild birds, as wild
animals, belong to the State, and no individual property rights exist in them as long as they
remain wild, unconfined, and undomesticated. Id. The Alliance does not allege that any of the
birds that would be harmed by the transmission line have ever ceased being wild, unconfined,
or undomesticated. (15) The Alliance cites to federal case law holding that environmental plaintiffs
adequately allege injury in fact for purposes of standing when they aver that they use the affected
area and are persons for whom the aesthetic and recreational values of the area will be lessened by
the challenged activity. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167,
183 (2000); American Bird Conservancy, Inc. v. Federal Commc'ns Council, 516 F.3d 1027, 1031
(D.C. Cir. 2008). Whether a plaintiff has standing in federal courts to assert a cause of action is not
indicative of the deprivation of a vested property right. See Cantrell v. City of Long Beach, 241 F.3d
674, 681 (9th Cir. 2001) ("That the litigant's interest [for purposes of standing] must be greater
than that of the public at large does not imply that the interest must be a substantive right sounding
in property or contract."). This Court has held that "[a]n injury need not affect 'vested' property
rights to confer standing" and, thus, "the harm [for purposes of standing] may be economic,
recreational, or environmental." Texas Rivers Prot. Ass'n v. Texas Natural Res. Conservation
Comm'n, 910 S.W.2d 147, 151-52 (Tex. App.--Austin 1995, writ denied). The Alliance's allegation
that its alleged harm would constitute an injury in fact for purposes of standing, therefore, does not
suffice as an allegation of a deprivation of a constitutionally protected interest.

 Consequently, the interests alleged by the Alliance do not constitute a vested
property right sufficient to support a due process claim. Absent any allegation of deprivation of a
vested property right, the Alliance has not alleged a right to judicial review based on an order that
adversely affects a vested property right or otherwise violates a constitutional right. See Continental
Cas. Ins. Co., 19 S.W.3d at 397. The district court properly dismissed the Alliance's due process
claim for lack of jurisdiction.


Conclusion

 We hold that (1) the APA does not provide Coastal Habitat Alliance with a right to
judicial review of the denial of its intervention before the Public Utility Commission, (2) sovereign
immunity would bar a UDJA claim based on such denial, and (3) the Alliance failed to allege
the deprivation of any vested property interest as a result of such denial. Therefore, we affirm the
judgment of the district court dismissing the Alliance's claims for lack of subject-matter jurisdiction.



 __________________________________________

 G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop;

 Concurring and Dissenting Opinion by Justice Patterson


Affirmed


Filed: July 8, 2009
1. Members of the Alliance identified in its motion to intervene include the American Bird
Conservancy, the Coastal Bend Audubon Society, the Houston Audubon Society, the Lower Laguna
Madre Foundation, and King Ranch, Inc.
2. After this appeal was filed, Kenneth W. Anderson, Jr. was appointed to replace Julie C.
Parsley as commissioner, and Donna L. Nelson was appointed to replace Paul Hudson as
commissioner. The successors have been substituted as appellees. See Tex. R. App. P. 7.2(a).


 In addition, at the district court, appellees AEP TCC, Texas Gulf Wind LLC, and
PPM Energy, Inc. intervened in the lawsuit. Texas Gulf Wind and PPM Energy are developing the
proposed wind farms to be connected to AEP TCC's transmission line.
3. After filing the original petition in district court, on December 17, 2007, the Alliance filed
a motion for rehearing with the Commission as to the Notice of Approval itself. To the extent the
motion was a viable motion, it was overruled by operation of law after no commissioner took action
on it. See Tex. Gov't Code Ann. § 2001.146(c) (West 2008).
4. Tex. Gov't Code Ann. §§ 2001.001-.902 (West 2008).
5. Tex. Util. Code Ann. §§ 11.001-66.016 (West 2007 & Supp. 2008). The PURA is the
Public Utility Commission's enabling statute. See Office of Pub. Util. Counsel v. Public Util.
Comm'n, 843 S.W.2d 718, 720 n.5 (Tex. App.--Austin 1992, writ denied).
6. Our holding that there is no statutory basis for a non-party to appeal the Commission's
denial of a motion to intervene does not foreclose the possibility of review via mandamus. See State
v. Thomas, 766 S.W.2d 217, 218-20 (Tex. 1989) (granting petition for writ of mandamus
and ordering Public Utility Commission to vacate its order denying Texas Attorney General's
intervention). The Alliance has not appealed the dismissal of its request for mandamus relief.
7. The Alliance cites Railroad Commission v. Ennis Transportation Co., 695 S.W.2d 706
(Tex. App.--Austin 1985, writ ref'd n.r.e.), to demonstrate that this Court has exercised jurisdiction
to review an administrative agency's decision to deny intervention. However, while this Court in
Ennis Transportation did address the merits of a denial of intervention in an administrative
proceeding, the source of the district court's jurisdiction over the non-party's appeal was
not addressed. See generally 695 S.W.2d 706. Moreover, the case involved an administrative
proceeding before the Railroad Commission--not the Public Utility Commission--and therefore,
PURA section 15.001 would not have applied to the proceedings. See id. at 708.
8. Ignoring the impact of PURA section 15.001 and focusing on APA section 2001.171 alone,
the Alliance argues it "exhausted all administrative remedies" by timely appealing to the
Commission the denial of its motion to intervene and by filing a motion for reconsideration in
accordance with the Commission's rules, and was "aggrieved by a final decision" that approved
the construction of a transmission line contrary to the Alliance's environmental interests. See
Tex. Gov't Code Ann. § 2001.171. In response, appellees assert that the APA itself could be
construed to foreclose judicial review for a non-party. See id. §§ 2001.145(a) ("A timely motion for
rehearing is a prerequisite to an appeal in a contested case . . . ."), 2001.146(a) ("A motion for
rehearing in a contested case must be filed by a party . . . ."). But see Thomas, 766 S.W.2d at 225-26
(Hecht, J., dissenting) (arguing that denial of motion to intervene should be appealable). Moreover,
even if the APA would authorize judicial review for a non-party appealing an interlocutory order
relating to the denial of intervention, appellees assert that the Alliance's petition was untimely
because it was filed before the decision in the case became final. See Lindsay v. Sterling,
690 S.W.2d 560, 563-64 (Tex. 1985) (dismissing lawsuit reviewing administrative decision where
plaintiff filed suit before motion for rehearing was overruled at agency level). We need not resolve
these issues concerning the APA, however, because we conclude that the PURA acts to prevent
the APA from providing an independent right to judicial review of a contested case before the
Commission.
9. Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008).
10. The original petition sought declaratory relief only under section 2001.038 of the APA,
which authorizes an action for declaratory judgment to determine the "validity or applicability of a
rule." Tex. Gov't Code Ann. § 2001.038(a); see Friends of Canyon Lake, Inc. v. Guadalupe-Blanco
River Auth., 96 S.W.3d 519, 529 (Tex. App.--Austin 2002, pet. denied) ("[Section 2001.038]
authorizes a district court to resolve two issues: (1) whether a rule is valid, and/or (2) whether a
rule is applicable."). The Alliance does not challenge the district court's dismissal of the APA
section 2001.038 claim.
11. Similarly, a court's decision on a party's intervention is vested in the discretion of the
court. See In re Lumbermens Mut. Cas. Co., 184 S.W.3d 718, 722-23 (Tex. 2006) (court of appeals'
denial of intervention reviewed for abuse of discretion); Zeifman v. Michels, 229 S.W.3d 460,
465 (Tex. App.--Austin 2007, no pet.) (trial court's denial of intervention reviewed for abuse of
discretion).
12. The Commission's rules state, "A person has standing to intervene if that person: (1) has
a right to participate which is expressly conferred by statute, commission rule or order or other
law; or (2) has or represents persons with a justiciable interest which may be adversely affected
by the outcome of the proceeding." 16 Tex. Admin. Code § 22.103(b) (2009) (Pub. Util. Comm'n,
Standing to Intervene).
13. "While the Texas Constitution is textually different in that it refers to 'due course' rather
than 'due process,' we regard these terms as without meaningful distinction. As a result, in matters
of procedural due process, we have traditionally followed contemporary federal due process
interpretations of procedural due process issues." University of Tex. Med. Sch. v. Than, 901 S.W.2d
926, 929 (Tex. 1995) (citation omitted).
14. In its briefing, the Alliance states that King Ranch "provides 825,000 acres of vested
property rights." Our question is not merely whether the Alliance's members possess vested
property rights, however, but whether there is any allegation that any such rights have been deprived. 
There is no allegation that the transmission line would traverse King Ranch's property. The only
alleged harm to King Ranch's real property interests is the impact the transmission line could have
on King Ranch's wildlife-related activities.
15. Indeed, it seems the Alliance's allegation of harm depends on the fact that the birds are
wild, unconfined, and undomesticated--and thus fit for birdwatching and habitat conservation.